## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

EDDIE BRILEY, JR.,
ADC #116921                                                            PLAINTIFF

V.                                   5:09CV00220 BSM/JTR

RONNIE COLE, Chief Deputy,
W.C. Dub Brassell Detention Center, et al.                  DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District

Judge Brian S. Miller.  Any party may serve and file written objections to this

recommendation.  Objections should be specific and should include the factual or

legal basis for the objection.  If the objection is to a factual finding, specifically

identify that finding and the evidence that supports your objection.  An original and

one copy of your objections must be received in the office of the United States District

Clerk no later than fourteen (14) days from the date of the findings and

recommendations.  The copy will be furnished to the opposing party.  Failure to file

timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new,

different, or additional evidence, and to have a hearing for this purpose before the

United States District Judge, you must, at the same time that you file your written

objections, include a "Statement of Necessity" that sets forth the following:

1.    Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence to be proffered at the requested hearing
      before the United States District Judge was not offered at
      the hearing before the Magistrate Judge.

3.    An offer of proof setting forth the details of any testimony
      or other evidence (including copies of any documents)
      desired to be introduced at the requested hearing before the
      United States District Judge.

From this submission, the United States District Judge will determine the necessity

for an additional evidentiary hearing, either before the Magistrate Judge or before the

District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## I.  Introduction

Plaintiff, Eddie Briley, Jr., is a prisoner in the Varner Unit of the Arkansas

Department of Correction.   In this *pro se* § 1983 action, he alleges that Defendants

violated his constitutional rights while he was a pretrial detainee at the Brassell

Detention Center ("BDC") by infringing his right to freely exercise his religion,

failing to protect him from being attacked by another detainee, and using excessive force against him.[1]  *See* docket entry #2.

Defendants have filed a Second Motion for Summary Judgment, a Brief in Support, a Statement of Undisputed Facts, a Response to Plaintiff's Statement of Disputed Facts, a Reply, and an Addendum.[2]  *See* docket entries #71, #72, #73, #79, #80, and #81.  Plaintiff has filed a Response and a Statement of Disputed Facts.  *See* docket entries #77 and #78.

## II.  Discussion

**A.     Plaintiff's Free Exercise of Religion Claim**

Plaintiff alleges that Defendants Gwen Jones and Glenda Wright, who are cooks in the BDC kitchen, violated his First Amendment right to freely exercise his religion

---

[1]  The Court has previously dismissed all other claims.  *See* docket entries #14 and #66.

[2]  It is well settled that summary judgment should only be granted when the record, viewed in a light most favorable to the nonmoving party, shows that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of informing the court of its basis for the motion and identifying the parts of the record that show lack of a genuine issue. *Celotex,* 477 U.S. at 323. To defeat a motion for summary judgment, the nonmoving party must go beyond the pleadings and establish "by affidavits, or by the depositions, answers to interrogatories, and admissions on file," that specific facts show a genuine issue for trial exists. *See* Fed R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324.

when they failed to provide him with meatless meals.  *See* docket entry #2.

### 1.    Facts

On April 28, 2009, Plaintiff filed a grievance requesting that he receive meatless meals in compliance with his *unspecified* religious beliefs.[3]  *See* docket entry #72, Ex. I.  In their  sworn affidavits, Defendants Jones and Wright state that they immediately began preparing meatless meals for Plaintiff.  *See* docket entry #72, Exs. T & U.

From May 6 to July 21, 2009, Plaintiff filed thirteen grievances stating that: (1) he had, periodically, failed to receive a meatless tray; and (2) the meatless trays he received were nutritionally inadequate.[4]  *See* docket entry #72, Exs. I through S; docket entry #77, Exs. M and N.

However, in their Affidavits, Defendants Jones and Wright state that: (1) Plaintiff's meatless trays contained vegetables and meat/protein substitutes such as cheese toast and peanut butter sandwiches; and (2) whenever they were notified that Plaintiff had inadvertently received a tray containing meat, they "immediately" prepared a meatless tray for Plaintiff.  *See* docket entry #72, Exs. T and U.

### 2.    Analysis

---

[3]  It is unclear when Plaintiff arrived at the BDC.

[4]  Plaintiff was transferred from the BDC to the ADC sometime near the end of August 2009.  *See* docket entry #6.

The Free Exercise Clause of the First Amendment prevents prison officials from substantially burdening a prisoner's sincerely held religious beliefs, including religiously based dietary needs. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008); *Love v. Reed*, 216 F.3d 682, 689 (8th Cir. 2000). Specifically, in *Kind v. Frank*, 329 F.3d 979, 981 (8th Cir. 2003), the Eighth Circuit acknowledged that "jail and prison inmates have the right to be provided with food sufficient to sustain them in good health and that satisfies the dietary laws of their religion."

The parties do not dispute that Plaintiff's request for meatless trays was based upon an unspecified, but sincerely held, religious belief. Thus, the relevant inquiry is whether Defendants Wright and Jones substantially burdened that sincerely held religious belief.

To constitute a substantial burden, the defendants' actions must:

> *significantly inhibit or constrain* conduct or expression that manifests some central tenet of a person's individual religious beliefs; must *meaningfully curtail* a person's ability to express adherence to his or her faith; or must deny a person *reasonable opportunities* to engage in those activities that are fundamental to a person's religion.

*Patel*, 515 F.3d at 813; *Murphy v. Mo. Dept. of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004) (emphasis added).

The parties dispute how many times Plaintiff improperly received trays containing meat products and whether, on those instance, he was provided with a

substitute meatless tray. *See* docket entries #72, #73, #77, and #78.

However, it is *undisputed* that even when Plaintiff periodically received a tray containing a meat entree (such as beans baked with pork) there were also meatless side items on his tray, such as vegetables, bread, and potatoes. Importantly, Plaintiff has not come forward with *any evidence* demonstrating that he lost weight or suffered any other signs of malnutrition due to the occasional failure to provide him with a completely meatless tray. *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (holding that, to survive summary judgment, a prisoner must produce evidence demonstrating that "his health suffered as a result of the food").

Additionally, it is undisputed that Plaintiff could have supplemented his meals by purchasing potato chips and other meatless items from the BDC commissary. *See Patel*, 515 F.3d at 814 (finding no "substantial burden" on a prisoner's religious beliefs because he could have occasionally supplement his religiously restricted diet with food purchased from the commissary).

Thus, the Court concludes that Plaintiff's free exercise claim fails, as a matter of law, because Defendants' occasional failure to provide him with a completely meatless meal did not substantially burden the practice of his religious beliefs.[5]

---

[5] It appears that Defendants Jones and Wright intended to comply with Plaintiff's request for a religious diet, and that the periodic failure of Plaintiff to receive that diet was due to *negligence*, rather than intentional conduct or deliberate

**B.      Plaintiff's Failure to Protect Claim**

Plaintiff alleges that Defendants Chief Deputy Ronnie Cole, Captain Edward Adams, Sergeant Phillip Baughmon, and Grievance Officer Judy Browley failed to protect him from being attacked by another detainee. *See* docket entry #2.

**1.      Facts**

On July 2, 2009, Plaintiff wrote an Emergency Grievance stating that he had several *unnamed* "enemies" housed with him in A pod. *See* docket entry #72, Ex. D. Accordingly, he asked to be moved to F-pod. *Id.* On the same day, Defendant Browley responded to that grievance by stating that F-pod was full and that Defendant Adams would "check it out later."[6] *Id.*

On July 5, 2009, around 5:30 p.m., Plaintiff was in an altercation with at least

---

indifference. The Eighth Circuit has not previously addressed whether intent is a relevant factor when reviewing a free exercise claim. However, the Tenth Circuit has held that it is. *See Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009). Specifically, in *Gallagher,* the Tenth Circuit held that a free exercise claim could not be based upon "isolated acts of negligence" in failing to provide a prisoner with his religious diet.

Nevertheless, the Court need not determine the issue of whether intent is relevant to a free exercise claim because it is clear, as a matter of law, that Defendants did not substantially burden Plaintiff's religious beliefs.

[6]   The parties agree that Plaintiff had previously been involved in two fights in the BDC. *See* docket entries #72, #73, #77, and #78. However, they hotly dispute whether: (1) Plaintiff was the instigator of those fights; (2) Plaintiff refused to assist Defendant Adams in determining the identities of his unspecified "enemies" in A pod; and (3) whether, on or about July 2, 2009, there was another pod or single-man cell at the BDC where Plaintiff could be safely housed. *Id.*

one other detainee in A pod.[7]  *See* docket entry #77, Ex. A.  Defendant Baughman

stopped the fight by spraying both detainees with pepper spray.[8]  *See* docket entry

#72, Ex. A docket entry #77, Ex. A.

After the altercation, Plaintiff only reported injury was pain in his left hand.

*See* docket entry #81.  Nurse Randle did not detect any swelling, and she gave him a

single dose of Ibuprofen to alleviate the pain.  *Id.*  Importantly, Nurse Randle did *not*

*detect any other injuries from the altercation*, and it is undisputed that Plaintiff did not

request further medical treatment for injuries he may have suffered during the July 5,

2009 fight.


**2.    Analysis**

The Supreme Court has clarified that being assaulted by other inmates or

detainees is not "part of the penalty that criminal offenders [must] pay for their

offenses."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  However, prison officials

---

[7]    Plaintiff contends that he was beaten by two detainees, and that the attack
was unprovoked.  *See* docket entries #77 and #78.  In contrast, Defendants observed
Plaintiff fighting with only one other detainee, and they claim that Plaintiff instigated
the fight.  *See* docket entry #72, Ex. G and H.

[8] Nurse Angela Randle examined Plaintiff immediately after the altercation.
*See* docket entry #81.She noted that his eyes were red from the pepper spray.  *Id.*
However, she determined that Plaintiff did not need any treatment for his eyes or any
other possible effects from the pepper spray.  *Id.*

do not commit a constitutional violation every time one prisoner attacks another. *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007); *Blades v. Schuetzle*, 302 F.3d 801, 803-04 (8th Cir. 2002).

Thus, to prevail on a  failure to protect claim, a pretrial detainee must prove that: (1) objectively, there was a substantial risk of serious harm; and (2) subjectively, the defendants knew of and disregarded that substantial risk of serious harm.[9] *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007); *Lenz v. Wade*, 490 F.3d 991, 995-996 (8th Cir. 2007); *Johnson v.  Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006).   As previously mentioned, there are numerous factual disputes in this case regarding whether there was a substantial risk that unspecified "enemies" in A pod might harm Plaintiff, and whether Defendants were deliberately indifferent to that risk.   However, the *undisputed medical evidence* demonstrates that Plaintiff did not suffer any objectively serious injuries as a result of July 5, 2009 altercation.

The Eight Circuit recently dealt with a similar set of facts in *Schoelch v. Mitchell*, 625 F.3d 1041, 1047 (8th Cir. 2010).  Specifically, in *Schoelch*, a pretrial

---

[9]  The Fourteenth Amendment applies to a failure to protect claim brought by a pretrial detainee, while the Eighth Amendment applies to a failure to protect claim brought by a convicted prisoner.  However, the Eighth Circuit has held that the deliberate indifference standard applies to a failure to protect claim brought under either the Fourteenth or Eighth Amendment. *Schoelch v. Mitchell*, 615 F.3d 1041, 1046 (8th Cir. 2010); *Crow v. Montgomery,* 403 F.3d 598, 601 (8th Cir. 2005).

detainee alleged that jailers failed to protect him from being attacked by a fellow detainee who threatened to kill him and then "slammed him into a wall." *Id.* at 1044. The Court acknowledged that there were genuine issues of material fact as to whether the jailers were, subjectively, deliberately indifferent to the risk of harm. *Id.* at 1046. However, the plaintiff failed to present any evidence demonstrating that he suffered an "objectively serious" injury as a result of the attack. *Id.* at 1047. Thus, even if the jailers were deliberately indifferent in failing to prevent the attack, the "alleged wrongdoing" was not "objectively harmful enough to establish a constitutional violation." *Id.* In other words, the Eighth Circuit held that the jailers were entitled to summary judgment because the plaintiff failed to "show that the harm he suffered from [the jailer's] alleged failure to protect him was objectively serious." *Id.*

As in *Schoelch*, the *undisputed* evidence in this case demonstrates that Plaintiff's only reported injury in the altercation was minor pain in his left hand, which the nurse treated with a single dose of Ibuprofen. Thus, Plaintiff did not suffer any objectively serious injuries as a result of the July 5, 2009 fight. Accordingly, Plaintiff's failure to protect claim does not rise to the level of constitutional violation, and Defendants are entitled to summary judgment.

## C.   Plaintiff's Excessive Force Claim

Plaintiff alleges that Defendant Baughmon used excessive force against him

when he stopped the July 5, 2009 fight in A pod.  *See* docket entry #2.

### 1.    Facts

On July 5, 2009, BDC Officer McAninch, who is not a Defendant in this action, saw Plaintiff and another inmate fighting in A pod.  *See* docket entry #77, Ex. A. McAninch immediately radioed for back up, and Defendant Baughman responded. *Id.*  The parties disagree as to what transpired next.

In his Affidavit, Defendant Baughman explains that, when he arrived at A pod, McAninch was inside the cell and "struggling" to stop the fight.[10]  *See* docket entry # 72, Ex. A.  Defendant Baughman sprayed both detainees with a "short burst" of pepper spray. *Id.* However, Plaintiff continued to "struggle and fight." *Id.*  Defendant Baughman "grabbed" Plaintiff by the clothes, "brought him to the ground," "fell on top" of him, and placed him in handcuffs.  *Id.* Plaintiff stopped struggling, and Defendant Baughman allowed him to shower to remove the pepper spray and change into clean clothes. *Id.*

In contrast, Plaintiff alleges that, upon entering A pod, Defendant Baughmon put him in a "headlock," and  "excessively maced [him] in the face and eyes."  *See* docket entry #2 at 4.  Plaintiff also contends that, after he was "subdued" and not

---

[10]  In his Incident Report, McAninch states that he and Defendant Baughman entered A pod together.  *See* docket entry #77, Ex. A.

"resisting," Defendant Baughmon "slammed" him "with force to the floor," "dragged" him down the hall, and "threw" him into the shower.  *Id.* at 4-5.

### 2.    Analysis

To prevail on a Fourteenth Amendment excessive force claim, a pretrial detainee must demonstrate that the amount of force used was not reasonably necessary to restore order or maintain discipline. *Andrews v. Neer*, 253 F.3d 1052, 1060-61 (8th Cir. 2001); *see also Johnson -El v. Schoemehl*, 878 F.2d 1043, 1048-49 (8th Cir. 1989) (explaining that the use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency and the amount of force used may not be in excess of that reasonably believed necessary to achieve those goals).

In evaluating an excessive force claim, the court must consider:  (1) the need for applying force; (2) the relationship between that need and amount of force used; (3) the threat reasonably perceived; (4) the extent of injury inflicted;  (5) whether force was used for punishment or instead to achieve a legitimate purpose such as maintaining order or security; and (6) whether a reasonable officer on the scene would have used such force under similar circumstances. *Roby v. McCoy*, Case No. 07-3647, 2009 WL 455116 (8th Cir. Feb. 25, 2009) (unpublished opinion); *Andrews*, 253 F.3d at 1061, n.7.

In this case, it is undisputed that it was necessary to use force to stop the fight between Plaintiff and his cellmate, and restore order to A pod.  Similarly, Plaintiff has failed to come forward with any evidence suggesting that Defendant Baughman used force to punish him, instead of for the legitimate purpose of restoring order to A pod. Thus, the relevant inquiry in this case is whether the amount of force used by Defendant Baughman was reasonably necessary to accomplish that goal.

Clearly, Defendant Baughman's limited use of pepper spray was a reasonable application of force used to accomplish the legitimate purpose of stopping a fight between two detainees.  *See Green v. Corrs. Corp. of America,* Case No. 10-3217, 2010 WL 4409652 (10th Cir. Nov. 8, 2010) (unpublished decision) (holding that the use of pepper spray was a reasonable application of force that was necessary to stop a fight between inmates and restore discipline to the unit).

Plaintiff goes on to allege that, Defendant Baughman then slammed him to the ground, dragged him down the hall, and threw him in the shower.  Importantly, the medical records do not, *in any way support* Plaintiff's contention that, after he was pepper sprayed, Defendant Baughman used any further force against him.  Nurse Randle's examination of Plaintiff makes it clear that she did not detect *any* injuries, other than red eyes.  Plaintiff's only complaint to Nurse Randle was pain in his left hand, for which he received a single dose of Ibuprofen.  Plaintiff never requested any

other medical treatment for his injuries.

Given these undisputed facts, no reasonable juror could conclude that Defendant Baughman used the force described by the Plaintiff in his Complaint. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (explaining, in an excessive force case, that: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"); *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (holding, in an excessive force case, that defendants were entitled to summary judgment because the plaintiff's "self-serving" allegations were "blatantly contradicted by the record" such that "no reasonable jury could believe them").

Accordingly, the Court concludes that Defendant Baughman is entitled to summary judgment on the excessive force claim Plaintiff has raised against him.

### III.   Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.     Defendants' Second Motion for Summary Judgment (docket entry #71) be GRANTED, and that this case be DISMISSED, WITH PREJUDICE.

2.     The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommended Disposition

-14-

would not be taken in good faith.

Dated this <u>8th</u> day of July, 2011.


_____

UNITED STATES MAGISTRATE JUDGE